Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| MARIANNE MICHELLE LEÓN MALDONADO<br><br>Apelada<br><br>v.<br><br>NOEL JOSÉ ARCE DURÁN<br><br>Apelante | KLAN202500143 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil núm.: PO2020RF00099 (404)<br><br>Sobre: Alimentos |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 13 de mayo de 2025.

Comparece ante este tribunal apelativo, el Sr. Noel J. Arce Durán (señor Arce Durán o apelante) mediante el recurso de apelación de epígrafe solicitándonos la revisión de una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI) el 8 de enero de 2025, notificada al próximo día. Mediante esta, el foro primario declaró *No Ha Lugar* a la solicitud de rebaja de pensión presentada por el apelante.

Por los fundamentos que esbozamos a continuación, se confirma el dictamen apelado.

### I.

El caso que nos ocupa tiene su génesis el 7 de febrero de 2020, cuando la Sra. Marianne M. León Maldonado (señora León Maldonado o apelada) presentó una petición de alimentos a favor de su hija menor M.C.A.L, procreada junto al señor Arce Durán.[1] Tras múltiples trámites procesales, el 12 de marzo de 2021, notificada el

---

[1] Véase, Apéndice del Recurso, a las págs. 24-25.

15 de marzo siguiente, el tribunal primario emitió una *Resolución* y declaró *Ha Lugar* a la petición de alimentos. Como corolario, fijó una pensión alimentaria final de $980.43 mensuales.[2]

Transcurridos poco más de dos años, el 8 de mayo de 2023, el señor Arce Durán presentó una *Moción en Solicitud de Revisión o Modificación de Pensión Alimentaria*.[3] Por medio de esta, indicó que las circunstancias de las partes habían cambiado. Precisó que al momento en que se fijó la pensión la señora León Maldonado se encontraba desempleada, pero que a la fecha trabajaba a tiempo completo. Añadió que la composición familiar del hogar en el que residía la menor había cambiado –puesto que la pareja de la señora León Maldonado había comenzado a vivir allí–, lo que implicaba un ajuste en su responsabilidad. Por último, sostuvo que **había sufrido una merma considerable en sus ingresos mensuales**.

El 25 de agosto siguiente, el señor Arce Durán presentó su Planilla de Información Personal y Económica (PIPE).[4] Ese mismo día, la señora León Maldonado también sometió su PIPE.[5]

Así las cosas, el 24 de octubre de 2024, se llevó a cabo la vista final sobre pensión alimentaria. En esa misma fecha, la Examinadora de Pensiones, Sra. Diana E. Vélez Quiñones (Examinadora), emitió el *Acta-Informe*, notificada el 8 de enero de 2025.[6]

Por medio de esta, la Examinadora consignó las siguientes determinaciones de hechos:

> Las partes procrearon una niña, quien reside con mamá: MCAL, nacida el 20 de mayo de 2016 (ocho años). La menor tiene cubierta médica del plan de salud privado Triple S, aportado por papá.
>
> **Información personal de la parte custodio**: su dirección es Urb. Valle Costero, Calle Ola C-28, Santa Isabel, PR 00757. Trabaja como asistente

---

[2] *Íd.*, a las págs. 26-28.
[3] *Íd.*, a las págs. 29-30.
[4] *Íd.*, a las págs. 31-38.
[5] *Íd.*, a las págs. 39-44.
[6] *Íd.*, a las págs. 65-66.

administrativa en RLL Service Station, en Coamo. Informó en su PIPE un ingreso bruto semanal de $420 ($1,680 neto mensual).

La parte custodio informó gastos de vivienda por $675 mensual. En la residencia viven tres personas.

La parte custodio reclamó, además, $270 por transportación y tutorías. Se alegó que el pago de tutorías es $15 diarios de lunes a jueves, o sea, $60 semanal ($260 mensual).

**Información personal de la parte no custodio**: su dirección es Urb. Villa España, Calle Asturia I-25, PR 00961. No tiene otros hijos menores dependientes. Trabaja como comprador gerente en Nuxor, San Juan. Del expediente surge que es por contrato de servicios profesionales. Informó en su PIPE un ingreso bruto mensual de $2,301 más $1,110 de comisiones, para un total de $3,301 mensual. De acuerdo a documentos del 31 de junio de 2023 que hizo formar parte de su PIPE, su salario bruto anual es de $27,612 más 2% de comisiones.

De acuerdo al Exhibit 1 "Desglose de comisiones y pago de nómina del demandado" surge que el ingreso bruto de 2022 fue $48,144.14; en $28,289.80 y hasta agosto 2024 de $32,385.63. Así las cosas, para 2024 lleva un neto de $29,147.06, o sea, $3,643.38 mensual. Cuando se estableció la pensión vigente en 2020 papá tenía un ingreso neto promedio de $3,398.82.

Se informó que papá provee plan médico privado a la menor $350 quincenal que le debitan de su cuenta. Sin embargo, surge $343.30 y a la menor le corresponde la mitad, o sea, $171.65.

(Énfasis en el original).

A tenor con lo anterior, la Examinadora concluyó que correspondía una pensión alimentaria de $1,031.98, por lo que recomendó declarar sin lugar la solicitud de rebaja de pensión alimentaria.

El 8 de enero de 2025, notificada al día siguiente, el tribunal primario emitió la *Resolución* recurrida, declarando *No Ha Lugar* a la solicitud de rebaja de pensión alimentaria.[7] En su *Resolución,* el foro *a quo* acogió la recomendación de la Examinadora, haciéndola formar parte de su dictamen.

Cabe señalar que, previo a la notificación del *Acta-Informe,* el 25 de octubre de 2024, el señor Arce Duran presentó una *Moción en*

---

[7] *Íd.*, a las págs. 1-2.

*Cumplimiento de Orden y Ac[l]aratoria.*[8] En lo que concierne, informó que era padre de otro menor de edad, y que ello debía ser considerado al momento de hacer el cómputo de la pensión. Por otro lado, hizo alusión a una alegación realizada en la vista sobre el seguro médico, e incluyó una certificación de cubierta del plan.[9] Junto a la moción, el apelante presentó copia del certificado del alegado hijo, y una certificación de cubierta emitida por Triple-S Salud.

Tras varias incidencias procesales, el 22 de enero de 2025, el señor Arce León presentó una *Moción de Reconsideración y en Solicitud de Determinaciones Adicionales*.[10] En primer orden, adujo que las determinaciones de hechos consignadas por la Examinadora incluían un lenguaje ambiguo que no permitía conocer con certeza cuáles hechos habían sido aceptados como probados. Añadió que, existía una inconsistencia entre las cantidades que surgían en la PIPE de la recurrida. Precisó, además, que esta última había reclamado gastos de $270 por tutorías y transportación, mas, la Examinadora había añadido otro gasto de tutorías por $260, sin aclarar cuál fue la cifra utilizada para el cómputo final. Por último, indicó que no se especificó si se presentó prueba sobre la cifra informada por gastos de vivienda.

En segundo lugar, el apelante adujo que el foro *a quo* había incidido al determinar que no tenía otros hijos menores. Arguyó que, dicha exclusión provocaba la aplicación de un porcentaje incorrecto y una reserva de ingresos errónea, lo que afectaba la determinación de la pensión alimentaria.

De otra parte, indicó que el cómputo de su ingreso neto mensual era incorrecto. Precisó que, de conformidad a las Guías

---

[8] *Íd.*, a las págs. 51-57.
[9] *Íd.*, a la pág. 57.
[10] *Íd.*, a las págs. 3-21.

Mandatorias, "el cómputo del ingreso neto mensual por ingresos provenientes de comisiones debe realizarse utilizando el promedio mensual recibido durante los treinta y seis (36) meses que anteceden a la vista."[11]

Adicionalmente, indicó que no se había incluido correctamente la deducción del plan médico. Detalló que, la Examinadora indicó que el costo del plan era quincenal, en lugar de mensual, según surgía de la evidencia presentada. Por último, solicitó que se excluyeran los gastos de tutoría del gasto de la pensión suplementaria, toda vez que no se había presentado evidencia suficiente.

Atendida la moción, el 23 de enero de 2025, el tribunal primario la declaró *No Ha Lugar*.[12]

Así las cosas, el señor Arce Durán acude ante este foro intermedio imputándole al foro primario haber incurrido en los siguientes errores:

> PRIMER ERROR: EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE PONCE, ERRÓ AL NO EMITIR DETERMINACIONES DE HECHOS CLARAS EN SU RESOLUCIÓN.
>
> SEGUNDO ERROR: EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE PONCE, ERRÓ AL ESTABLECER INCORRECTAMENTE EL INGRESO NETO DEL SR. ARCE DURÁN.
>
> TERCER ERROR: EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE PONCE, ERRÓ AL CONCLUIR QUE EL SR. NOEL ARCE DURÁN NO TIENE OTROS HIJOS MENORES DEPENDIENTE.
>
> CUARTO ERROR: EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE PONCE, ERRÓ AL NO CONSIDERAR LAS DEDUCCIONES PERMITIDAS POR LEY.
>
> QUINTO ERROR: EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE PONCE, ERRÓ AL INCLUIR GASTOS SUPLEMENTARIOS SIN EVIDENCIA QUE SUSTENTE LOS MISMOS.

---

[11] *Íd.*, a la pág. 14.
[12] *Íd.*, a las págs. 71-72.

Como parte de su recurso, el señor Arce Durán presentó un *pendrive* identificado como apéndice 11, el cual, según indicado, contenía la regrabación de la vista final de alimentos. No obstante, el mismo no es compatible con nuestro sistema operativo. A esos efectos, el 27 de febrero de 2025, emitimos una *Resolución* en la cual dispusimos que este se tenía por no presentado. En consecuencia, concedimos un término de diez (10) días al apelante para acreditar si era necesaria la reproducción de la prueba oral para atender su recurso.

El 13 de marzo de 2025, el señor Arce Durán presentó una *Moción en Cumplimiento de Orden*, en la cual indicó que la regrabación de la prueba oral no era necesaria para evidenciar los errores señalados. Precisó que estos "surgen del análisis de la normativa y su incorrecta aplicación, no de la apreciación de la prueba oral". Así pues, el 14 de marzo posterior, emitimos una segunda *Resolución* concediendo un término de treinta (30) días a la apelada para expresarse en cuanto al recurso. El 11 de abril de 2025, se cumplió con lo ordenado, por lo que nos damos por cumplidos y a su vez, decretamos perfeccionado al recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Guías Mandatorias para Computar Pensiones Alimentarias**

La obligación de los progenitores de brindar alimentos a sus hijos e hijas menores de edad no emancipados es parte esencial del derecho a la vida consagrado en las Secciones 1 y 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. *McConnell v. Palau*, 161 DPR 734, 745 (2004). Este deber está regulado estatutariamente en varios artículos del Código Civil y en la Ley Especial para el Sustento de Menores, Ley núm. 5 de 30 de diciembre de 1986, según enmendada (Ley núm. 5), 8 LPRA sec. 501

*et seq.* Esta última, mandata al Administrador de la Administración para el Sustento de Menores, en consulta con el Director Administrativo de la Oficina de la Administración de los Tribunales, a preparar y adoptar unas guías para determinar y modificar las pensiones alimentarias para menores de edad. Artículo 19, 8 LPRA sec. 518.

En cumplimiento con dicho mandato, fueron aprobadas las *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico* (Guías Mandatorias) (Reglamento Núm. 9535 de 15 de febrero de 2024). Por medio de estas, se establecen los parámetros objetivos indispensables para determinar la cuantía de las pensiones alimentarias, sin obviar el binomio básico "necesidad recursos" que impone el Código Civil. *Guadalupe Viera v. Morell*, 115 DPR 4, 14 (1983).

**La apreciación de la prueba y el estándar de revisión apelativa**

Nuestro más alto foro ha establecido claramente que los foros apelativos solo intervendrán con la apreciación de la prueba que haga el foro de instancia, cuando se demuestre que la intervención del juzgador sobre los hechos en controversia se encuentra viciada por pasión, prejuicio, parcialidad o error manifiesto. *Colón v. Lotería*, 167 DPR 625 (2006); *Colón v. Glamorous Nails*, 167 DPR 33 (2006); *Rodríguez v. Urban Brands*, 167 DPR 509 (2006); *S.L.G. Giovanetty v. ELA*, 161 DPR 492, 518 (2004); *Trinidad v. Chade*, 153 DPR 280, 291 (2001). Esto implica que los tribunales apelativos deben rendir deferencia a la apreciación de la prueba que realiza un tribunal de instancia. *McConnell v. Palau*, 161 DPR 734, 750 (2004).

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones ponderadas del foro de instancia. *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999). Esto porque los juzgadores de primera instancia se encuentran en mejor posición de

aquilatar la prueba testifical, observar el comportamiento de los testigos mientras declaran y adjudicar la credibilidad que merezcan. *Arguello v. Arguello,* 155 DPR 62, 79 (2001); *Orta v. Padilla,* 137 DPR 927, 937 (1995); *Monllor v. Soc. Legal de Gananciales,* 138 DPR 600, 610 (1995).

Sobre el particular, las Reglas de Procedimiento Civil disponen que las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto, a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. Regla 43.2, de las Reglas Procedimiento Civil, 32 LPRA Ap. III R. 43.2. Esto porque, al evaluar la prueba oral, el juzgador de instancia tiene que ponderar integradamente los siguientes aspectos: (1) el comportamiento del testigo mientras declara y la forma en que lo hace; (2) la naturaleza o carácter del testimonio; (3) el grado de capacidad del testigo para percibir, recordar o comunicar cualquier asunto sobre el cual declara; (4) la existencia o inexistencia de cualquier prejuicio, interés u otro motivo de parcialidad; (5) las manifestaciones anteriores del testigo; (6) el carácter o la conducta del testigo en cuanto a veracidad o mendacidad; y (7) la existencia o inexistencia de un hecho declarado por el testigo. Regla 44, inciso (B) (1-7) de las Reglas de Evidencia, 32 LPRA Ap. IV. En ese sentido, si al evaluar las transcripciones de la prueba oral, la naturaleza de los testimonios es creíble y los mismos no reflejan contradicciones, el foro apelativo no podrá sustituir el criterio del foro de instancia con el suyo propio.

**Reproducción de la prueba oral**

Cuando la parte apelante señale algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de esta por parte del tribunal apelado, someterá una transcripción, una exposición estipulada o una exposición narrativa de la prueba. Regla

19 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.19. El Tribunal de Apelaciones depende de la reproducción de la prueba oral para poder dirimir si erró o no el foro de primera instancia en sus determinaciones de hechos.

**El debido proceso de ley**

La Constitución del Estado Libre Asociado de Puerto Rico, al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que: "ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley." Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1.

El debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. Al amparo del debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. R*omán Ortiz v. OGPe*, 203 DPR 947 (2020); *Rivera Rodríguez & Co. v. Lee Stowell Etc.*, 133 DPR 881 (1993); *Rodríguez Rodríguez v. E.L.A.*, 130 DPR 562 (1992). Por otro lado, en el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Román Ortiz v. OGPe*, supra; *Rivera Rodríguez & Co. v. Lee Stowell Taylor Etc.*, supra.

Se ha señalado que, para que entre en vigor la protección que ofrece este derecho, en su vertiente procesal tiene que estar en juego un interés individual de libertad o propiedad. *Rivera Santiago v. Srio. de Hacienda*, 119 DPR 265, 274 (1987). Una vez cumplida esta exigencia, hay que determinar cuál es el procedimiento exigido. *Íd.*

Dependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial. *Íd.*

La jurisprudencia ha establecido diversos requisitos que debe cumplir todo procedimiento adversativo, para satisfacer las exigencias del debido proceso, a saber: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) **derecho a contrainterrogar testigos y examinar evidencia presentada en su contra**; (6) tener asistencia de abogado, y (7) que la decisión se base en el récord. *Román Ortiz v. OGPe,* supra; *Rivera Rodríguez & Co. v. Lee Stowell Taylor Etc.,* supra.

**III.**

En esencia, el apelante señaló que erró el TPI al emitir el dictamen recurrido con determinaciones incorrectas y al considerar gastos sin la debida justificación evidenciaria. Adelantamos que no le asiste la razón.

De entrada, atenderemos el **primer** y **quinto** señalamiento de error en conjunto.

En su **primer** señalamiento de error, el apelante sostiene que el foro primario incidió al no emitir determinaciones de hechos claras. Aduce que el uso de ciertos términos es ambiguo, lo que no permite establecer cuáles fueron los hechos aceptados como probados. Por otro lado, como **quinto** error, señala que el foro *a quo* incidió al incluir gastos suplementarios sin evidencia. Aduce que, la Examinadora añadió gastos por concepto de tutorías sin que se presentaran documentos que justificaran su necesidad.

De una lectura detenida del recurso ante nuestra consideración, advertimos que dichos errores giran en torno a la apreciación de la prueba presentada ante el foro recurrido. No

obstante, el señor Arce Durán no nos colocó en posición de revisar las determinaciones realizadas por el tribunal primario a base de la prueba desfilada.

Según reseñamos en el derecho que precede, este tribunal depende de la reproducción de la prueba oral para poder dirimir si erró o no el foro de primera instancia en sus determinaciones de hechos. Sin esta, quedamos impedidos de ejercer nuestra función revisora y pasar juicio sobre la evaluación de la prueba oral que realizó el foro primario y/o intervenir con la apreciación de la prueba y adjudicación de credibilidad de este.

No obstante lo anterior, en el presente caso, el apelante no presentó una transcripción o exposición narrativa de la prueba oral presentada ante el TPI, mediante la cual pudiese controvertir la apreciación realizada por el foro *a quo*. Adviértase que, luego de dar por no puesto el *pendrive* presentado, concedimos un término al apelante para acreditar si era necesaria la reproducción de la prueba oral para atender su recurso. Empero, este compareció e indicó que la comisión de los errores surgía del análisis del derecho y no de la apreciación de la prueba. De modo que, aun cuando este foro revisor le concedió un término para presentar una transcripción o exposición narrativa de la prueba oral, el señor Arce Durán optó por no hacerlo.

Al así obrar, este no nos colocó en posición para descartar la apreciación de la prueba realizada por el foro recurrido. No podemos obviar que, en el *Informe al Tribunal* presentado por la Examinadora al foro primario, esta ratificó que los gastos suplementarios considerados fueron: $100 de matrícula; $270 de mensualidades de colegio; y $260 mensual de tutorías y transportación.[13] Lo que no fue adecuadamente refutado por el señor Arce Durán. Asimismo,

---

[13] Véase, Apéndice del Recurso, a la pág. 69.

precisa advertir que el apelante expresa en el recurso que no se presentó evidencia respecto a los referidos gastos suplementarios, lo que fue controvertido por la señora León Maldonado en su alegato en oposición.[14]

Consecuentemente, resulta forzoso concluir que el primer y cuarto error no se cometieron.

Resuelto lo anterior, procedemos a discutir el **segundo** y el **cuarto** señalamiento de error de manera conjunta.

En su **segundo** señalamiento de error, el apelante sostiene que el ingreso neto establecido por la Examinadora es incorrecto, toda vez que no se utilizó el cómputo que disponen las Nuevas Guías. Evaluado el *Acta-Informe* emitido por la Examinadora, apreciamos que, para realizar el cálculo correspondiente al ingreso neto, esta utilizó como prueba un documento intitulado *Desglose de comisiones y pago de nómina del demandado*. En su Informe, la Examinadora se refiere a este documento como *Exhibit 1*,[15] lo que sugiere que se trata de un **documento presentado en la vista** celebrada.

De otra parte, como **cuarto** error, el apelante señala que el tribunal primario no consideró las deducciones permitidas por ley. Precisa que, la Examinadora reportó un pago de $350 quincenales por concepto de seguro médico, aun cuando había demostrado que el pago era mensual. Al revisar el expediente, observamos que igual al asunto anterior, este fue atendido durante la celebración de la vista. En específico, surge de la *Moción en Cumplimiento de Orden y Ac[l]aratoria*, del 25 de octubre de 2024, que el apelante realizó el siguiente planteamiento: "Cumpliendo con nuestro deber continuo

---

[14] Véase, *Alegato en Oposición a Recurso de Apelación*, a la pág. 12, y *la Moción Sometiendo Documentos*, incluida como anejo, a las págs. 13-21.
[15] Véase, Apéndice del Recurso, a la pág. 65.

de informar y **en sustento a la alegación que hicimos en la vista**, incluimos una Certificación del Plan Médico con la tarifa actual...".[16]

Adviértase pues, que ambos asuntos fueron presentados ante la Examinadora durante la celebración de la vista. De modo que, también se trata de señalamientos de error relacionados a la apreciación de la prueba por el foro recurrido. Tal cual explicado, cuando una parte pretende impugnar la apreciación de la prueba, esta viene obligada a presentar la transcripción o una exposición narrativa de la prueba oral. Subrayamos nuevamente que, en el presente caso, el señor Arce Durán no solo omitió incluir alguna de estas, sino que indicó que no eran necesarias para atender los errores señalados.

Asimismo, con respecto a los señalamientos de error segundo y cuarto, este tampoco presentó documento alguno que nos permita si quiera revisar (1) las cuantías utilizadas para calcular el ingreso neto; ni (2) cuánto pagaba por concepto de seguro médico.[17] En este particular, añadimos que en la *Moción de Reconsideración y en Solicitud de Determinaciones Adicionales,* instada por el apelante ante el TPI, este prácticamente confirma el sueldo mensual promedio calculado por la Examinadora lo que contradice drásticamente su argumento en el petitorio para que se le revisara o modificara la pensión alimentaria, de que sufrió una merma considerable de los ingresos mensuales.[18]

Así pues, en ausencia de evidencia que demuestre que el Tribunal de Primera Instancia actuó con pasión, prejuicio o parcialidad, o incurrió en error manifiesto, estamos impedidos de sustituir el criterio del tribunal *a quo*, por lo que damos deferencia

---

[16] *Íd.*, a la pág. 52.
[17] Precisamos que del expediente ante nuestra consideración surge una certificación de cubierta emitida por Triple-S Salud, la cual certifica que el señor Arce Durán mantiene un seguro médico. No obstante, de esta no surge información relacionada al pago del referido plan. Véase, Apéndice del Recurso, a la pág. 57.
[18] *Íd.*, a la pág. 16.

a la apreciación de la prueba realizada por este. Por lo que, razonamos que los errores segundo y cuarto tampoco fueron cometidos.

Por último, atendemos el **tercer** señalamiento de error. Por medio de este, el señor Arce Durán aduce que el foro primario incidió al concluir que no tiene otros dependientes. Indica que tal exclusión provocó que se aplicara un porcentaje incorrecto al calcular la reserva de ingresos, afectando así, el cálculo de la pensión alimentaria básica. No le asiste la razón.

Conforme surge del expediente, la vista final de pensión alimentaria se llevó a cabo el 24 de octubre de 2024. En ese mismo día, la Examinadora emitió su *Acta-Informe*, en la cual consignó, como parte de sus determinaciones de hechos, que el señor Arce Durán no tenía otros hijos menores dependientes. Al próximo día, el 25 de octubre de 2024, el apelante presentó una moción mediante la cual, entre otros asuntos, informó **por primera vez** que era padre de otro menor.[19] Es decir, el señor Arce Durán informó sobre la existencia de otro hijo menor dependiente **luego** de culminado el descubrimiento de prueba, e incluso, luego de celebrarse la vista final de pensión alimentaria ante la Examinadora.

Al así obrar, la parte apelada no tuvo oportunidad de contrainterrogar a los testigos y examinar la evidencia presentada en su contra. Lo que resulta en contravención al debido proceso de ley en su vertiente procesal, al no proveer un procedimiento justo y equitativo.

Añádase que, el señor Arce Durán no incluyó al alegado hijo menor dependiente en la PIPE, documento que se suscribe **bajo juramento**, garantizando que la información provista es exacta y

---

[19] *Íd.*, a las págs. 51-57.

completa, y que no se ha omitido ningún asunto pertinente o sustancial.

Cabe señalar que, para justificar su descuido, el apelante argumentó en su *Moción de Reconsideración y en Solicitud de Determinaciones Adicionales* que la información había sido omitida "debido a limitaciones del formato".[20] No obstante, si bien el inciso III de la PIPE lleva por título *Información sobre Otros Menores de Edad que Viven con Usted*, el encasillado provee una columna para indicar si el menor de edad vive con otra persona. Simultáneamente, incluye tres columnas adicionales que permiten indicar si existe una orden de pensión para con dicho menor, así como la cantidad y la frecuencia de esta. De modo que, su argumento resulta inmeritorio.

Con todo, razonamos que la moción que informó la existencia de otro hijo menor dependiente fue presentada a destiempo y en clara violación al debido proceso de ley. La recomendación emitida por la Examinadora estuvo basada en la prueba testifical y documental que surgía del expediente y que tuvo ante su consideración. Por ende, concluimos que el tercer error no fue cometido.

Por último, no podemos obviar que el señor Arce Durán, en la discusión de los errores, falló en producir cómputos matemáticos que nos permitieran entender, a base de sus argumentos, cómo cambiaría el resultado final del TPI respecto a la improcedencia de la solicitud de rebaja de pensión. Por el contrario, la apelada, en su escrito en oposición, realizó un ejercicio aritmético que avala lo determinado por el foro *a quo*.[21]

**IV.**

Por los fundamentos anteriormente expuestos, confirmamos la determinación apelada.

---

[20] *Íd.*, a la pág. 13.
[21] Véase, *Alegato en Oposición a Recurso de Apelación*, a la págs. 8 y 9.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones